**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 1:18-cv-01342-RM-GPG

STELA FESTINI-STEELE,

    Plaintiff,

v.

EXXONMOBIL CORPORATION,

    Defendant.

---

# ORDER
---

This matter is before the Court on the August 14, 2019, recommendation of United States Magistrate Judge Gordon P. Gallagher (ECF No. 139) to deny Plaintiff's motion for judgment on the pleadings (ECF No. 114) on her first claim for relief. Plaintiff has filed an objection to the recommendation (ECF No. 140), and Defendant has filed a response to the objection (ECF No. 141). For the reasons below, the Court overrules Defendant's objection, accepts and adopts the recommendation, and denies Plaintiff's motion. The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## I.    LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district court may review a magistrate judge's

report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.3d 1165, 1167 (10th Cir. 1991).

"Judgment on the pleadings is appropriate only when the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgments as a matter of law." *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (quotation omitted). A motion for judgment on the pleadings is reviewed under the same standards as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). Accordingly, the Court must assess whether the complaint is legally sufficient to state a claim for which relief may be granted. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014).

## II. BACKGROUND

Plaintiff and Billy R. Steele divorced in 2014. They prepared a separation agreement using a form issued by the Colorado Judicial Department. (ECF No. 128-1, Separation Agreement.) In the life insurance section of the agreement, a box is checked that corresponds to this sentence: "The parties agree to the following terms relating to all life insurance accounts." (*Id.* at 3.) Below that, a box is checked that corresponds to "Other," and this sentence is written: "The Petitioner Billy R. Steele will carry life insurance on Co-Petitioner Stela Festini-Steele as beneficiary until daughter [A.I.S.] is 18 years of age." (*Id.* at 4.) The separation agreement was later incorporated into a divorce decree. Defendant, Mr. Steele's employer at the time of the divorce, provided life insurance as an employee benefit.

Mr. Steele died in an auto accident in 2017. Plaintiff made a claim for the life insurance benefits, but Defendant informed her that she was not the beneficiary of any policies insuring the life of Mr. Steele. Plaintiff provided Defendant with the divorce decree and other documentation

2

to support her claim.  Nonetheless, Defendant denied Plaintiff's claim based on its determination that the separation agreement did not meet the requirements of a qualified domestic relations order ("QDRO").  In its letter denying the claim, Defendant stated that the separation agreement "does not meet QDRO requirements because it does not specify an amount of insurance to carry and it does not specify the name of the benefit plan."  (ECF No. 125-4, Adverse Benefit Determination at 1.)

Plaintiff brought an action in state court, which Defendant removed to this Court.  After filing an amended complaint (ECF No. 105), Plaintiff filed her motion for judgment on the pleadings (ECF No. 114), which was referred to the magistrate judge (ECF No. 115).  The magistrate judge agreed with Defendant that the divorce decree is not a QDRO because it fails to identify each plan to which it applies.  Plaintiff objects to that determination.  The Court reviews the matter de novo.

## III.     ANALYSIS

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), federal law preempts nearly all state law claims relating to employee benefit plans.  *Carland v. Metro. Life Ins. Co.*, 935 F.2d 1114, 1118 (10th Cir. 1991).  However, a limited exception applies to divorce decrees issued by state courts that meet the QDRO requirements.  *Id.* at 1119.  This exception to federal preemption "protect[s] spouses and dependents by allowing a state order, outside of the four corners of the employee benefit plan, to modify the distribution of the plan's benefits." *Sun Life Assurance Co. v. Jackson*, 877 F.3d 698, 702 (6th Cir. 2017).

To qualify as a QDRO, an order must clearly specify

(i)     the name and last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C). A divorce decree meeting these requirements "provides all the necessary information to determine the identity of a beneficiary without creating unreasonable administrative burdens for the plan administrator." *Carland*, 935 F.3d at 1120. Thus, the QDRO requirements "protect plan administrators by requiring the order to be clear about the identify of the alternate payee and the benefits to be redirected." *Jackson*, 877 F.3d at 702; *see also Metro. Life Ins. Co. v. Wheaton*, 42 F.3d 1080, 1084 (7th Cir. 1994) ("The purpose [of the QDRO requirements] is to reduce the expense of ERISA plans by sparing plan administrators the grief they experience when because of uncertainty concerning the identity of the beneficiary they pay the wrong person, or arguably the wrong person, and are sued by a rival claimant.").

Because Defendant denied Plaintiff's claim based on its determination that the separate agreement "does not specify an amount of insurance to carry and does not specify the name of the benefit plan" (ECF No. 125-4 at 1), this case implicates the second and fourth QDRO requirements listed above.[1] The Court agrees with Defendant that neither requirement is met and therefore the separation agreement is not a QDRO.

The separation agreement states that Mr. Steele "will carry life insurance on Co-Petitioner Stela Festini-Steele as beneficiary." (ECF No. 128-1 at 4.) According to Plaintiff,

---

[1] To the extent Defendant attempts to raise additional issues in its opposition to Plaintiff's motion for judgment on the pleadings (ECF No. 125), these are not properly before the Court. *See Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) ("[T]he federal courts will consider only those rationales that were specifically articulated in the administrative record as the basis for denying a claim." (quotation omitted)); *see also id.* at 1040-41 ("A plan administrator may not treat the administrative process as a trial run and offer a post hoc rationale in district court." (quotation omitted)).

this language means that Mr. Steele agreed to carry life insurance on himself with Plaintiff as the beneficiary. But Plaintiff's interpretation is not the only plausible interpretation of this language. To begin with, it is not entirely clear whose life is to be insured. The language does not say that Mr. Steele will carry life insurance on his own life. Instead, it says that he will carry life insurance "on" Plaintiff. Such language could mean that Mr. Steele was supposed to carry life insurance on Plaintiff's life with himself as the beneficiary. Although Plaintiff presents a plausible reading of the separation agreement, the purpose of requiring a QDRO to "clearly specify" the listed requirements is to avoid such uncertainty. *See Hawkins v. C.I.R.*, 86 F.3d 982, 991 (10th Cir. 1996). In addition, the form used by Plaintiff and Mr. Steele, which directs the parties to "[c]heck all that apply," contains a fill-in portion that states "[t]he Petitioner will carry life insurance on his/her life in the amount of $ \_\_\_\_\_ with \_\_\_\_\_ (name of spouse) as beneficiary . . . ." (ECF No. 128-1 at 3.) Had Plaintiff and Mr. Steele checked the corresponding box and used this part of the form agreement, perhaps ascertaining their intent would be a less formidable challenge. But in any event, "[w]hether a domestic relations order qualifies as a QDRO depends on the language of the order itself; the subjective intentions of the parties are not controlling." *Hawkins*, 86 F.3d at 989-90. The QDRO requirements are not optional, *see id.* at 992, and the Court finds that the language of the separation agreement fails to "clearly specify" two of the statutory requirements.

First, the separation agreement does not clearly specify each plan to which it applies. *See* § 1056(d)(3)(C)(iv). No plan is identified or named in the separation agreement, and, as noted above, it is not entirely clear whose life is to be insured and who the intended beneficiary is. Plaintiff argues that Mr. Steele's account with Defendant must be included because the separation agreement expressly applies "to all life insurance accounts," relying heavily on

*Jackson*, 877 F.3d at 704. However, the provision at issue in that case contained considerably more specificity and clarity than the separation agreement in this case, providing, in relevant part, as follows: "In order to secure the obligation of the parties to support their child during her minority, Father and Mother shall maintain, unencumbered, all employer-provided life insurance, now in existence at a reasonable cost, or later acquired at a reasonable cost, naming their minor child as primary beneficiary during her minority . . . ." *Id.* at 700. In assessing whether the Jacksons' divorce decree identified each plan to which it applied, the court had little trouble concluding that "all employer-provided life insurance" referred to the specific employer-provided plan under consideration. *Id.* at 704. But the separation agreement here uses much broader language and purports to apply "to all life insurance accounts" (ECF No. 128-1 at 3), without reference to whether they are employer-provided, currently in existence, or later acquired. Expanding the rationale of *Jackson* to encompass the separation agreement in this case would allow Plaintiff to circumvent the QDRO requirements simply by using the inclusive term "all." Such a result would violate the plain meaning of § 1056(d)(3)(C), which states that a QDRO must "clearly specify" the four requirements listed above. Moreover, relaxing these requirements "would involve the courts in precisely the sort of subjective inquiry that statute was designed to avoid." *Hawkins*, 86 F.3d at 992; *see id.* at 993 (holding that the identical statute under the Internal Revenue Code "should be accorded its plain meaning, and not interpreted so as to allow the parties to omit the requested information whenever it is convenience or even perhaps logical to do so.").

Second, the separation agreement does not clearly specify the amount or percentage of the participant's benefits to be paid by the plan to Plaintiff, or the manner in which such amount or percentage is to be determined. *See* § 1056(d)(3)(C)(ii). Based on the same reasoning as

6

above, the Court concludes that Plaintiff cannot circumvent this requirement simply by executing a separation agreement that purports to memorialize the parties' agreement on "terms relating to all life insurance accounts." The QDRO requirements were designed to allow parties to a divorce decree to modify employee benefit plans under limited circumstances, without creating unreasonable administrative burdens for plan administrators. The intent was to allow distribution of plan benefits while avoiding inquiry into what the parties intended when drafting the divorce decree. *See Hawkins*, 86 F.3d at 992 ("We do not believe that Congress intended—without expressly saying so—that the precise [QDRO] requirements . . . could be disregarded in favor of conducting this type of *ad hoc* subjective inquiry."). To accept the separation agreement here as a QDRO would mean accepting a facially inadequate order on the basis that administrator was aware of the parties' true intentions, an approach the United States Court of Appeals for the Tenth Circuit expressly rejected in *Hawkins*.

## IV. CONCLUSION

Therefore, the Court OVERRULES Plaintiff's objection to the magistrate judge's recommendation (ECF No. 140), ACCEPTS and ADOPTS the recommendation (ECF No. 139), and DENIES Plaintiff's motion for judgment on the pleadings (ECF No. 114).

DATED this 22nd day of November, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge